**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF SOUTH CAROLINA**
**Charleston Division**

| | |
|---|---|
| DEREK CLEMENTS, CADE KLOSTER, ZACH POKRANT, JAMES VASILIU, JUDSON BABCOCK, ANDY BAUMANN, LANCE CAREY, JENNIFER HALL, CONNER WILBURN, JOSIAH BEGGS, AMELIA CASS, JAKE FORD, EZRA PAUL, CALEB PYM, RACHEL SHAFFER, AARON STAIGER, NATHAN SUESS, ROMAN PENNEY, ANDREW WOJTKOW, NATHAN AIME, TABITHA AIME, SOPHIA GALDAMEZ, DAYNA JOHNSON, JIN JOHNSON<br><br>Plaintiffs,<br><br>v.<br><br>LLOYD J. AUSTIN, III<br>Secretary of Defense<br>Department of Defense<br><br>FRANK KENDALL<br>Secretary of the Air Force<br>Department of the Air Force<br><br>CHRISTINE WORMUTH<br>Secretary of the Army<br>Department of the Army<br><br>LINDA L. FAGAN<br>Admiral, Coast Guard<br>Commandant of the Coast Guard<br><br>RICHARD M. CLARK<br>Lieutenant General, Air Force<br>Superintendent<br>U.S. Air Force Academy<br><br>STEVEN W. GILLAND<br>Major General, Army | Civil Action No.: 2:22-cv-02069-DCN |

Superintendent )
U.S. Military Academy, )
West Point )
)
WILLIAM G. KELLY )
Rear Admiral, Coast Guard )
Superintendent )
U.S. Coast Guard Academy )
)
Defendants. )
)

## COMPLAINT

Military actions are not exempt from judicial review, and federal district courts have the authority to enjoin the military from enforcing a decision that is arbitrary, capricious, contrary to law, and unconstitutional. Similarly, the military is required to follow its own rules, should it choose to promulgate them.

Defendant Secretary of Defense Lloyd Austin, III's decision to require all service members to receive an unapproved and unlicensed SARS-CoV-2 ("COVID-19") vaccine disregards his own agency's requirements to determine whether an individual vaccine recipient has natural immunity. Combined with his individual Service Secretaries' decisions to categorically deny religious exemption requests, Defendants' orders establishing a mandatory vaccination program are arbitrary, capricious, contrary to service regulation and federal law, and unconstitutional. Plaintiffs—comprised of service academy cadets, and active duty and Reserve officers and enlisted personnel of the Armed Forces and Coast Guard—now turn to this Court with a plea for relief.

## PARTIES

1. Plaintiff Derek Clements is a Technical Sergeant ("TSgt") in the United States Air Force

with over 17 years of service, currently stationed at Joint Base Charleston, South Carolina. His religious accommodation request and appeals have been denied; he was ordered on April 18, 2022, to begin a vaccine "regimen" within 5 calendar days. TSgt Clements has already received a Letter of Admonishment and Letter of Reprimand for not taking the vaccine for violation of a "lawful" order under Article 92, Uniform Code of Military Justice ("UCMJ"), and faces further adverse disciplinary action, including involuntary separation with a less than honorable characterization of service.

2. Plaintiff Cade Kloster is a Senior Airman ("SrA") in the United States Air Force stationed at Joint Base Charleston, South Carolina. He has natural immunity from a prior COVID-19 infection, as confirmed through a positive antibody test. His religious accommodation request and appeal were denied; he has been ordered to receive a COVID-19 vaccine by June 27, 2022, or face separation with a less than honorable characterization of service.

3. Plaintiff Zach Pokrant is a Captain ("Capt") in the United States Air Force stationed at Joint Base Charleston, South Carolina. He has natural immunity from a prior COVID-19 infection, as confirmed through an antibody test. His religious accommodation request was denied. Although his appeal is still pending, in the likely event it is denied, Capt Pokrant faces adverse disciplinary action for vaccine refusal, including potential separation with a less than honorable characterization of service.

4. Plaintiff James Vasiliu is a SrA in the United States Air Force stationed at Joint Base Charleston, South Carolina. He has natural immunity from a prior COVID-19 infection in September 2021. His religious accommodation request and appeal were denied, and he has been ordered to receive a COVID-19 vaccine or else face further disciplinary action and involuntary separation with a less than honorable characterization of service for violating

Article 92, UCMJ.

5. Plaintiff Judson Babcock is a Lieutenant Colonel ("Lt Col") in the United States Air Force, stationed at the United States Air Force Academy ("USAFA"), Colorado Springs, Colorado. He has natural immunity from a COVID-19 infection in April 2021. Lt Col Babcock's religious and medical accommodation requests have both been denied, and he now faces likely adverse disciplinary action and separation.[1]

6. Plaintiff Andy Baumann is a Major ("Maj") in the United States Air Force Reserve, with over 18 years of service. He presently serves with the Air Force Reserve Command Force Generation Center, Robbins Air Force Base, Georgia. He has natural immunity, as indicated by a monitored COVID-19 antigen test conducted in January 2022. His religious accommodation request and appeal were denied. Maj Baumann has already received a Letter of Reprimand and has been told he faces involuntary removal to the Individual Ready Reserve—a process with no notice/response or appeal process. Maj Baumann has been informed that the paperwork for affecting said movement has already been prepared. [2]

7. Plaintiff Lance Carey is a TSgt in the Air Force stationed at Fort Gordon, Georgia. He has natural immunity from a prior COVID-19 infection. His religious accommodation request and subsequent appeals were denied. Because of this denial, on June 3, 2022, TSgt Carey was ordered to initiate a vaccination "regimen" within 5 calendar days, or face initiation of

---

[1] Lt Col Babcock is seeking to be named as an intervening Plaintiff in *Doster*, *et a. v. Kendall*, *et al.*, Case No. 1:22-cv-00084, (S.D. Ohio) He therefore will not be included in the first or second causes of action herein; this information is provided for background purposes.

[2] Maj Baumann was included as a putative class member in *Navy Seal 1*, *et al. v. Austin*, *et al.*, Case No. 8:21-cv-2429, (M.D. Fl.); as of June 2, 2022, all Air Force members were moved into a separate case, which has been stayed pending resolution of the requested class certifications in *Air Force Officer v. Biden*, Case No. 5:22-cv-9 (M.D. Ga.) and *Doster*, *supra* at n.1.

involuntary separation with a less than honorable characterization of service.[3]

8. Plaintiff Jennifer Hall is a recently promoted Colonel ("Col") in the United States Air Force, serving as a Professor of Strategy and Security Studies at Air University, Maxwell Air Force Base, Alabama. Her religious accommodation request and appeals were denied. In response, Col Hall submitted a request to retire, in accordance with Air Force policy following a denial of a Religious Accommodation Request. Defendant Secretary of the Air Force denied her request on May 25, 2022, stating that she failed to demonstrate her early separation was "in the best interest of the Air Force . . . given the overall health of [her] career field." In conclusion, the denial "recognizes the applicant may be subject to administrative discharge actions for refusal to obey a lawful order to receive the COVID-19 vaccine." She has since been ordered to be fully vaccinated by July 22, 2022, or face adverse disciplinary and punitive action under the UCMJ. If involuntarily separated, she faces substantial recoupment of service bonuses, and the possibility of reduction to a much lower rank, thereby resulting in a potential near 40% reduction in anticipated retirement pay.

9. Plaintiff Conner Wilburn is a Capt in the United States Air Force, stationed at Fairchild Air Force Base, Washington. His religious accommodation request and appeal were both denied. Moreover, his travel has been substantially restricted, thereby denying his access to training and hindering his ability to progress in his career. Capt Wilburn faces further adverse disciplinary action for vaccine refusal, including potential separation with a less than honorable characterization of service. As a graduate of the USAFA, Capt Wilburn also has a year left on his service academy commitment and 8 years left on his Active Duty Service

[3] TSgt Carey was also recently selected for promotion to Master Sergeant, to be affected in October 2022, and yet will likely be prevented from advancing to this rank.

Commitment, meaning that he could be subjected to forced recoupment if he is discharged with less than honorable characterization of service.

10. Plaintiff Josiah Beggs recently completed his first year as a cadet at USAFA. He has natural immunity from a prior COVID-19 infection. His religious accommodation request and appeal were denied. Cadet Beggs received a Letter of Reprimand on May 9, 2022, and has been told that unless he begins a COVID-19 vaccine regimen by August 1, 2022, he will be disenrolled effective that date.[4]

11. Plaintiff Amelia Cass recently completed her first year as a cadet at USAFA. She has natural immunity from a prior COVID-19 infection. Her religious accommodation request and appeal were denied. Cadet Cass has a temporary medical waiver but is subject to disenrollment once the medical waiver is no longer valid.

12. Plaintiff Jake Ford recently completed his first year as a cadet at USAFA. His religious accommodation request and appeal were denied. He has prior immunity from a COVID-19 infection in January 2022. Cadet Ford has already received a Letter of Reprimand for refusing to comply with the vaccine order, and faces further adverse disciplinary action for vaccine refusal, including disenrollment.[5]

13. Plaintiff Ezra Paul recently completed his second year as a cadet at USAFA. His religious accommodation request and appeal were denied. He has natural immunity from a prior COVID-19 infection, as confirmed via an antibody test in March 2022. Cadet Paul faces

---

[4] Cadet Beggs is seeking to be named as an intervening Plaintiff in *Doster*, *supra* at n.1.

[5] Cadet Ford is seeking to be named as an intervening Plaintiff in *Doster*, *supra* at n.1.

adverse disciplinary action for vaccine refusal, including disenrollment.[6]

14. Plaintiff Caleb Pym recently completed his first year as a cadet at USAFA. He has natural immunity from a prior COVID-19 infection, as confirmed via a positive test on August 15, 2021. His religious accommodation request and appeals were denied. On April 13, 2022, Cadet Pym was ordered to receive the COVID-19 vaccine or face certain disciplinary action and processing for involuntary disenrollment from the Academy.[7]

15. Plaintiff Rachel Shaffer recently completed her third year as a cadet at USAFA. She has natural immunity from a prior COVID-19 infection in March 2021, as confirmed via an antibody test in April 2022. Her religious accommodation request and appeal were denied. On April 2, 2022, Cadet Shaffer was ordered to receive the COVID-19 vaccine or face certain disciplinary action and processing for involuntary dismissal from the Academy. Because she has "committed" to the Air Force and served in excess of two years at the Academy, she will also be subjected to recoupment of her educational costs.[8]

16. Plaintiff Aaron Staiger is a first-year cadet at USAFA. He has natural immunity from a prior COVID-19 infection in August 2021, as confirmed via an antibody test in April 2022. His religious accommodation request was denied and is awaiting decision on appeal. He has been allowed to enter the Academy due to a temporary medical waiver; if the waiver is revoked, he faces disenrollment.

17. Plaintiff Nathan Suess recently completed his fourth year as a cadet at USAFA. His religious

---

[6] Cadet Paul is seeking to be named as an intervening Plaintiff in *Doster*, *supra* at n.1.

[7] Cadet Pym is seeking to be named as an intervening Plaintiff in *Doster*, *supra* at n.1.

[8] Cadet Shaffer is seeking to be named as an intervening Plaintiff in *Doster*, *supra* at n.1.

accommodation request and appeals were denied. He has natural immunity to COVID-19 as confirmed via an antibody test on June 20, 2022. Although Cadet Suess was permitted to graduate and obtain his degree, his commission is being withheld, he was placed into no-pay post-graduation status, and he now faces dismissal from the Academy and forced recoupment of his educational costs.[9]

18. Plaintiff Roman Penney recently completed his first year as a cadet at the United States Military Academy ("USMA"), West Point, New York. His religious accommodation request was denied. Cadet Penney faces adverse disciplinary action for vaccine refusal, including potential disenrollment.

19. Plaintiff Andrew Wojtkow recently completed his first year as a cadet at USMA. His religious accommodation request was denied and is awaiting decision on appeal. He has natural immunity to COVID-19 from a prior infection. Cadet Wojtkow faces adverse disciplinary action for vaccine refusal, including potential disenrollment.

20. Plaintiff Nathan Aime is a cadet at the United States Coast Guard Academy ("USCGA"), New London, Connecticut. He has natural immunity from a previous COVID-19 infection in February 2021, as subsequently confirmed by a COVID antibody test conducted in March 2022. Cadet N. Aime's religious accommodation request and appeal have been denied. He has since been subjected to two separate negative counselings ("Page 7"). His second Page 7 was issued on June 13, 2022, and directed him to receive the first of two COVID-19 vaccines within five (5) business days—or June 21, 2022. He was notified by Defendant Rear Admiral

---

[9] Illustrative of the many sacrifices made by cadets and service members in service to their country, Cadet Suess is not permitted to marry his fiancé while still a cadet, as rules prohibit cadets from marrying. Accordingly, the withholding of his commission has forced Cadet Suess and his fiancé to postpone his scheduled wedding.

("RAMD") Kelly, Superintendent of USCGA, on June 23 that he is being immediately disenrolled from the Academy. He has until June 30, 2022, to submit an appeal, which is likely to be denied. If denied, he will be immediately disenrolled.

21. Plaintiff Tabitha Aime is a cadet at USCGA. She has natural immunity from a previous COVID-19 infection in January 2021, and as subsequently confirmed by a COVID antibody test conducted in March 2022. Cadet T. Aime's religious accommodation request and appeal have been denied. She has since been subjected to two Page 7 counselings; her second Page 7 was issued on June 13, 2022, and directed her to receive the first of two COVID-19 vaccines within five (5) business days—or June 21, 2022. She was notified on June 23 by Defendant RADM Kelly that she is being immediately disenrolled from the Academy. She has until June 30, 2022, to submit an appeal, which is likely to be denied. If denied, she will be immediately disenrolled.

22. Plaintiff Sophia Galdamez recently completed her third year as a cadet at USCGA. She has natural immunity from a prior COVID-19 infection. Both her religious accommodation request and appeal were denied. She has since been subjected to two Page 7 counselings; her second Page 7 was issued on June 13, 2022, and directed her to receive the first of two COVID-19 vaccines within five (5) business days—or June 21, 2022. She was notified on June 23 by Defendant RADM Kelly that she is being immediately disenrolled from the Academy. She has until June 30, 2022, to submit an appeal, which is likely to be denied. If denied, she will be immediately disenrolled.

23. Plaintiff Dayna Johnson recently completed her first year as a cadet at USCGA. Both her religious accommodation request and appeal were denied. She has since been subjected to two Page 7 counselings; her second Page 7 was issued on June 13, 2022, and directed her to

receive the first of two COVID-19 vaccines within five (5) business days—or June 21, 2022. She was notified on June 23 by Defendant RADM Kelly that she is being immediately disenrolled from the Academy. She has until June 30, 2022, to submit an appeal, which is likely to be denied. If denied, she will be immediately disenrolled.

24. Plaintiff Jin Johnson recently completed his third year as a cadet at USCGA. Both his religious accommodation request and appeal were denied. He has since been subjected to two Page 7 counselings; his second Page 7 was issued on June 13, 2022, and directed him to receive the first of two COVID-19 vaccines within five (5) business days—or June 21, 2022. He was notified on June 23 by Defendant RADM Kelly that he is being immediately disenrolled from the Academy. He has until June 30, 2022, to submit an appeal, which is likely to be denied. If denied, he will be immediately disenrolled.

25. Each Plaintiff, in requesting the religious accommodation, addressed in great detail his or her sincerely held religious belief, and why receipt of any of the COVID-19 vaccines, even those being unlawfully required under Emergency Use Authorization ("EUA") status, violated those sincerely held religious beliefs. Further, each of Plaintiff's religious accommodation was reviewed and approved by a service chaplain.

26. Each Plaintiff, to date, has not been tested by the respective service for prior immunity.

27. Upon best information and belief, each Plaintiff, to date, has not been offered a vaccine licensed by the Food and Drug Administration ("FDA").

28. Defendant Lloyd J. Austin, III, Secretary of Defense, Department of Defense, mandated that all service members and cadets be "fully vaccinated" with a licensed vaccine—despite the licensed vaccine being unavailable in the United States—against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including involuntary

separation from the military. The Department of Defense is present in, and conducts business in, this District.

29. Defendant Frank Kendall, Secretary of the Air Force, Department of the Air Force, has implemented the DoD Memorandum by requiring that all service members and cadets be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including involuntary separation from the Air Force. To date, Defendant Secretary Kendall has ordered myriad Airmen separated from the Air Force for failure to receive the vaccine. The Department of the Air Force is present in, and conducts business in, this District.

30. Defendant Christine Wormuth, Secretary of the Army, Department of the Army, has implemented the DoD Memorandum by mandating that all service members and cadets be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including involuntary separation from the Army. To date, Defendant Secretary Wormuth has ordered myriad Soldiers separated from the Army for failure to receive the vaccine. The Department of the Army is present in, and conducts business in, this District.

31. Defendant Admiral ("ADM") Linda L. Fagan, Commandant of the Coast Guard, Department of Homeland Security, has continued implementation of the DoD Memorandum by mandating all Coast Guard service members and cadets be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including termination or removal from the Coast Guard. To date, Defendant ADM Fagan has ordered myriad Coast Guardsmen separated from the Coast Guard for failure to receive the vaccine. The Department of Homeland Security is present in, and conducts business in, this

District.

32. Defendant Lieutenant General ("LTG") Richard M. Clark, United States Air Force, Superintendent of USAFA, Department of the Air Force, has implemented the DoD Memorandum by mandating that all cadets be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including disenrollment from the Academy. LTG Clark has already initiated the disenrollment process for some cadets.

33. Defendant Major General ("MG") Steven W. Gilland, United States Army, Superintendent of USMA, Department of the Army, has continued implementation of the DoD Memorandum by mandating that all cadets be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including disenrollment from the Academy.[10]

34. Defendant RADM William G. Kelly, United States Coast Guard, Superintendent of USCGA, has implemented the Coast Guard's mandate that all service members and cadets be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including disenrollment. RADM Kelly has already initiated disenrollment of all USCGA cadets named as Plaintiffs in this matter.

**JURISDICTION AND VENUE**

35. This action is brought under the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*, and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, *et seq.*, challenging the unlawful and unconstitutional nature of the mandates, and the blanket policy

[10] MG Gilland replaced Lieutenant General ("LTG") Darryl Williams, United States Army, as Superintendent on June 27, 2022.

of the named Defendant departments, service branches, and military academies to categorically deny Plaintiffs' religious accommodation requests with regards to the COVID-19 vaccine.

36. The APA provides the Court with the authority to review final agency action to determine if it is arbitrary, capricious, unsupported by evidence, contrary to law, or unconstitutional.

37. The RFRA provides the Court with the authority to grant appropriate relief against the government when an individual's religious exercise has been burdened in violation of the RFRA. 42 U.S.C. § 2000bb-1(c). This authority applies to the military. *See* 42 U.S.C. § 2000bb-1; 42 U.S.C. § 2000bb-2(1).

38. The declaratory relief requested herein is proper under 5 U.S.C. §§ 706(1)-(2), 21 U.S.C.§§ 2201 and 2202, and 42 U.S.C. § 2000bb-1(c).

39. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) and 28 U.S.C. § 141402(a)(1), because this is the judicial district in which Defendants and several Plaintiffs are located. All Plaintiffs have a common question of law with respect to the lawfulness of the vaccine mandate's requirement to use EUA vaccines, and the arbitrary and capricious nature of the mandates being issued in violation of this statute.

## STATEMENT OF FACTS

### Development of Vaccines

40. Upon best information and belief, the novel COVID-19 infection first arrived in the United States in or around January 2020. Just a few short months later, then President Trump directed the immediate development of a vaccine under Operation "Warp Speed." This condensed an otherwise decades-long vaccine development process into less than one year.

41. From this endeavor were born three vaccines that were, and are, widely available in the United States: the Pfizer-BioNTech COVID-19 vaccine, the Moderna COVID-19 vaccine, and Johnson & Johnson's Janssen COVID-19 vaccine.[11] None of these vaccines are licensed by the FDA; rather, they were authorized for emergency use under Section 564 of the Food, Drug, and Cometic Act, 21 U.S.C. § 360bbb-3.

42. The Pfizer-BioNTech vaccine received EUA status on December 11, 2020.[12] Approval was based on a study of BNT162b2, which was distributed as a frozen suspension (-80°C to -60°C) that must be thawed and diluted with 1.8 mL of sterile 0.9% sodium chloride.[13]

43. On August 23, 2021, the FDA approved the Pfizer-BioNTech's Biologics License Application ("BLA") for this specific product and authorized the companies to jointly market the product as "COMIRNATY."[14]

44. COMIRNATY is "legally distinct with certain differences" from the Pfizer-BioNTech COVID-19 vaccine that was authorized for emergency use in December 2020.

45. Simultaneous with the licensing of COMIRNATY, the FDA reissued EUA approval for the Pfizer-BioNTech vaccine, stating that "[t]here is no adequate, approved, and available

---

[11] The Johnson & Johnson vaccine is a viral vector vaccine, not mRNA. Nevertheless, the CDC encourages individuals to receive an mRNA vaccine over the Johnson & Johnson vaccine. *Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety*, Ctrs. for Disease Control & Prevention (June 10, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html (last visited June 28, 2022).

[12] U.S. Food & Drug Admin., EUA for an Unapproved Product Review Memorandum, https://www.fda.gov/media/144416/download (last visited June 16, 2022).

[13] *Id.*

[14] U.S. Food & Drug Admin., BioNTech Manufacturing GmbH Biologics License Application Approval (Aug. 23, 2021), https://www.fda.gov/media/151710/download (last visited Jan. 3, 2022).

alternative to the emergency use of Pfizer-BioNTech COVID-19 Vaccine."[15] The EUA approval letter also noted there were insufficient stocks of the COMIRNATY "approved vaccine" available for distribution. This language is consistent with 21 U.S.C. §360bbb-3(c)(3), which states that an EUA cannot be issued unless "there is no adequate, approved, and available alternative to the product."

46. On November 18, 2021, Pfizer-BioNTech submitted a supplemental BLA requesting to change the formula of COMIRNATY to a Tris/Sucrose base that did not require dilution—unlike the originally tested and approved COMIRNATY. The FDA issued an approval letter of the supplemental BLA less than a month later on December 16, 2021.[16] Whereas the "first" COMIRNATY was to be distributed with a purple-colored cap and bottle label, this "second" COMIRNATY is to be distributed with a gray-colored cap and bottle label. The gray-colored vials were not intended to be marketed until May 18, 2022.[17]

47. To reiterate, the Pfizer-BioNTech vaccine, to this date, remains under EUA (last reissued on June 17, 2022), with a statutory determination that there is no "adequate, approved, and

---

[15] U.S. Food & Drug. Admin, Letter of Authorization – Pfizer-BioNTech (reissuing authorization) (Aug. 23, 2021), http://web.archive.org/web/20210823142928/https:/www.fda.gov/media/150386/download (last visited June 21, 2022)

[16] U.S. Food & Drug Admin., BioNTech BLA Supplemental Approval (Dec. 16, 2021), https://www.fda.gov/media/154939/download (last visited June 21, 2022).

[17] U.S. Food & Drug Admin., COMIRNTAY Gray Label Insert, https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=48c86164-de07-4041-b9dc-f2b5744714e5&type=display (last visited Jun. 27, 2022).

available alternative to the product."[18] The Moderna and Johnson & Johnson's Janssen COVID-19 vaccine, similarly, remain under EUA.[19]

**Military Mandates**

48. On August 9, 2021, Defendant Secretary of Defense Austin issued a memorandum notifying the entire Department of Defense ("DoD") that the President had asked him "to consider how and when [DoD] might add the coronavirus disease 2019 (COVID-19) vaccines to the list of those required for all Service members."[20] Defendant Secretary of Defense Austin stated that he would issue a mandate by either first seeking the President's approval by mid-September to use an EUA vaccine, or upon approval of a vaccine by the FDA, whichever occurred first.[21]

49. Defendant Secretary of Defense Austin wasted no time in issuing the mandate once the FDA "licensed" COMIRNATY on August 23, 2021. The very next day, August 24, 2021, he mandated all service members must receive "full vaccination" against COVID-19 via inoculation with a "fully licensed" vaccine.[22]

---

[18] U.S. Food & Drug Admin., Letter of Authorization – Pfizer-BioNTech (reissuing authorization) (June 17, 2022), https://www.fda.gov/media/150386/download (last visited June 21, 2022).

[19] U.S. Food & Drug Admin., Letter of Authorization – Janssen COVID-19 Vaccine (reissuing authorization) (May 5, 2022), https://www.fda.gov/media/146303/download (last visited Jan. 3, 2022); Letter of Authorization – Moderna (reissuing authorization), U.S. Food & Drug Admin. (Mar. 29, 2022), https://www.fda.gov/media/144636/download (last visited June 21, 2022).

[20] Sec'y of Def., Message to the Force (Aug. 9, 2021), https://media.defense.gov/2021/Aug/09/2002826254/-1/-1/0/MESSAGE-TO-THE-FORCE-MEMO-VACCINE.PDF (last visited June 21, 2022).

[21] *Id.*

[22] Sec'y of Def., Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members (Aug. 24, 2021), https://media.defense.gov/2021/Aug/25/2002838826/-1/-

50. Service members with prior COVID-19 infection and immunity would not be considered fully vaccinated.[23]

51. Defendant ADM Fagan[24] issued a Coast Guard order two days later, on August 26, 2021, wholly adopting Defendant Secretary of Defense Austin's August 24 memorandum.[25] Even more worrisome is that ADM Fagan specifically required inoculation with the unlicensed Pfizer-BioNTech vaccine, not the "licensed," and unavailable, COMMIRNATY.[26] This requirement to be inoculated with an unlicensed vaccine showed just how little attention was paid by the services in rushing through this mandate.

52. Each of the Armed Services, including the Coast Guard, has issued implementation guidance that requires either compliance or certain disciplinary action, including likely involuntary separation from the service with a possible stigmatizing less-than-honorable characterization of service.

**Unlawful Nature of the Mandate**

53. The military COVID-19 vaccine mandate (a collection of the mandates and orders issued by Secretary of Defense Austin, the Service Secretaries, and Defendant ADM Fagan) was

---

1/0/MEMORANDUM-FOR-MANDATORY-CORONAVIRUS-DISEASE-2019-VACCINATION-OF-DEPARTMENT-OF-DEFENSE-SERVICE-MEMBERS.PDF (last visited June 21, 2022).

[23] *Id.*

[24] The order itself was issued by her predecessor, but as ADM Fagan is the current Commandant, all historical facts will reference her for continuity purposes.

[25] ALCOAST 305/21 (Aug. 26, 2021).

[26] *Id.*

purposefully issued in violation, and without consideration, of federal statutes and service regulations.

***Military Regulation on Natural Immunity***

54. Joint Services Regulation, "Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases," October 7, 2013, issued as Army Regulation (AR) 40-562, Air Force Instruction (AFI) 48-110_IP, and Coast Guard Commandant Instruction ("COMDTINST") M6230.4G, [27] "provides directive requirements for the Military Vaccination Program; establishes general principles, procedures, policies, and responsibilities for the immunization program; and implements military and international health regulations and requirements."[28]

55. This regulation is unequivocal in its requirement that before being administered a mandatory vaccine, the service member will be tested for prior immunity.[29]

56. Prior immunization, per this regulation, shall be treated as a medical exemption from a required vaccine.[30]

---

[27] For ease of reference, this regulation will be cited to AR 40-562, even though it applies to all Service Defendants.

[28] AR 40-562 at ¶1-1.

[29] *Id.* at ¶¶ 1-4.*c.*(4) ("Medical commanders, commanding officers, and command surgeons: Ensure patients are evaluated for preexisiting immunity, screened for administrative and medical exemptions, and/or evaluated for the need for medical exemptions to immunizations or chemoprophylaxis medications."); 2-6.*a.*(1)(*b*) ( a medical exemption is warranted with "[e]vidence of immunity based on serologic tests, documented infection, or similar circumstances."); 3-1.*a.*(2) "(Immunize if the primary series is incomplete, if a booster immunization is needed, or if the Service personnel has no serologic or documented evidence of immunity."); 3-1.*a.*(3) ("Before immunizing, conduct serologic testing where available."); and 3.1.*e.* ("Upon accession, screen commissioned and warrant officers for immunization *or immunity status* and vaccinate as required.").

[30] *Id.* at Appendix C, table C-1 (medical exemption code MI, which stands for (medical, immune)).

57. Underscoring this requirement to test service members for prior immunity is the science regarding the efficacy of natural immunity to COVID-19. At the time the memorandum mandate was issued, DoD and its services had information that demonstrated the efficacy of previous infection against reinfection, and also possessed information detailing the ineffectiveness of the vaccines in preventing or reducing COVID-19 transmissibility. Notably, a June 2021 study conducted by the revered Cleveland clinic found that individuals previously infected with COVID-19 did not suffer reinfection, and that ultimately, "Individuals who have had SARS-CoV-2 infection are unlikely to benefit from COVID-19 vaccination."

***FDA License v. EUA Status***

58. 10 U.S.C § 1107a unambiguously requires informed consent by service members—with the option to refuse—prior to receipt of an EUA product. This requirement for informed consent can only be waived, in writing, by the President.[31]

59. The Secretary of Defense is required to abide by this proscription: allow informed consent, with the opportunity to refuse without adverse consequences, or seek the President's written approval for use of an EUA product.[32]

60. Defendants Secretary of Defense Austin and ADM Fagan knew, as of August 23, 2021, that COMIRNATY was not available in the United States nor was it to be manufactured and distributed in the United States; and yet, both Defendants summarily disregarded statutes and regulation, and ordered their service members be inoculated with an EUA vaccine.

---

[31] 10 U.S.C. § 1107a(a)(1).

[32] DoD Instruction (DoDI) 6200.02 at ¶¶5.2.2, 5.2.3.

61. To circumvent the requirement to obtain the President's written approval to use an EUA, Defendants Secretary of Defense Austin, his Service Secretaries, and ADM Fagan have affirmatively stated the Pfizer-BioNTech vaccine and COMIRNATY are interchangeable.

62. "Interchangeable" and "interchangeability" are specifically defined terms in Section 351 of the Public Health Service Act ("PHSA") governing the regulation of biologics, 42 U.S.C. § 262,[33] in relation to a "reference product," [34] which is a biological product licensed under Section 351(a) of the PHSA. 42 U.S.C. § 262(a).[35]

63. For the purposes of determining "interchangeability," the "reference product" must be an FDA-licensed product; in this case, the FDA licensed COMIRNATY vaccine. But the "interchangeable" product, the EUA Pfizer-BioNTech Vaccine, must be the subject of a later filed "abbreviated" application under 42 U.S.C. § 262(k), and there is no indication that any such application was ever filed by BioNTech, much less reviewed or approved by the FDA.

---

[33] "Interchangeable" and "interchangeability" are defined as a "biological product" that "may be substituted for the reference product" by health care providers. 42 U.S.C. § 351(i)(3). To meet the standards in 42 U.S.C. § 262(k)(4) ("Safety standards for determining interchangeability"), the "interchangeable" or substitute biological product (i) must be biosimilar to the reference product, and (ii) "can be expected to produce the same clinical result as the reference product in any given patient." 42 U.S.C. § 262(k)(4).

[34] "Reference product" is defined as "the single biological product licensed" under 42 U.S.C. § 262(a) "against which a biological product is submitted" under 42 U.S.C. § 262(k). 42 U.S.C. § 351(i)(4).

[35] These definitions and related provisions were enacted as part of the Biologics Price Competition Act of 2009, which "amends the PHSA and other statutes to create an abbreviated licensure pathway," under Section 351(k) of the PHSA, 42 U.S.C. § 262(k), "for biological products shown to be interchangeable with an FDA-licensed biological reference product," licensed under Section 351(a) of the PHS Act, 42 U.S.C. § 262(a). *See generally* U.S. Food & Drug Admin, *et al.*, Considerations in Demonstrating Interchangeability with a Reference Product: Guidance for Industry (May 2019), https://www.fda.gov/media/124907/download (last visited June 23, 2022).

64. Thus, the Pfizer-BioNTech vaccine and COMIRNATY are not legally interchangeable.

***Religious Accommodations***

65. The First Amendment to the United States Constitution protects the free exercise of religion.

66. Similarly, with limited exception, the RFRA proscribes that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."[36]

67. The exception occurs when the burden is: "(1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."[37]

68. Defendants Secretary of Defense, Secretary of the Air Force, Secretary of the Army, and Commandant of the Coast Guard have all enacted service instructions incorporating this constitutional and statutory requirement, and allow service members to seek religious accommodations from the vaccine mandate.[38]

69. The First Amendment, RFRA, and service regulations are precisely why Pentagon Press Secretary John Kirby stated during a press briefing about Secretary of Defense Austin's August 10, 2022, memorandum that, "There is a religious exemption possibility for any mandatory vaccine," and that the Department of Defense "take[s] freedom of religion and

[36] 42 U.S.C. § 2000bb-1(a).

[37] 42 U.S.C. § 2000bb-1(b).

[38] DoDI 1300.17, "Religious Liberty in the Military Services"; Air Force Directive Policy ("AFDP") 52-2, "Accommodation of Religious Practices in the Air Force" (implementing DoDI 1300.17); AFI 52-201, "Religious Freedom in the Department of the Air Force" (implementing AFDP 52-2); AR 600-20, "Army Command Policy"; and COMDINST 1000.15, "Religious Accommodations" (referencing COMDTINST M6230.4 and DoDI 1300.17).

worship seriously, in the military, [because] it's one of the things that we sign up to defend."[39]

70. And yet, hardly any of the thousands of religious accommodations requested have been approved.

71. As of the date of this Complaint, the Air Force has received 13,376 requests, and subsequent appeals, for religious accommodation and has only approved 118. Conversely, the Air Force has approved 979 administrative exemptions and 709 medical exemptions.[40]

72. Upon information and belief, Defendant Secretary of the Air Force Kendall gave directives to Commanders, through official and/or unofficial channels, that religious accommodations were not to be granted to the COVID-19 vaccination policy. The evidence for this includes, without limitation, a declaration filed in a related matter, in which an Air Force colonel testified that the Air Force was reserving its exemptions for medical and administrative reasons while rejecting religious exemption requests.

73. Upon best information and belief, as of May 2, 2022, the Coast Guard has approved only 4 of approximately 1,300 religious accommodation requests.

---

[39] *Services Will Make Call on Religious Exemptions to COVID-19 Vaccines*, DOD NEWS (Aug. 10, 2021), https://www.defense.gov/News/News-Stories/Article/Article/2726774/services-will-make-call-on-religious-exemptions-to-covid-19-vaccines/ (last visited June 23, 2022).

[40] *DAF COVID-19 Statistics - June 2022*, U.S.A.F. (June 14, 2022) https://www.amc.af.mil/News/Article-Display/Article/3055214/daf-covid-19-statistics-june-14-2022/ (last visited June 28, 2022). The website does not list how many medical and administrative requests were submitted; only how many were approved.

74. Upon best information and belief, the Army has received in excess of 3,760 religious exemption requests. As of March 15, 2022, it had approved only one request.[41]

75. The Army, Air Force, and Coast Guard continue to separate service members whose religious accommodation requests have been denied. The only branch to suspend such separations is the Navy, and that only occurred on June 22, 2022, per a preliminary injunction issued in *Navy Seals 1-26 v. Biden*, Case No. 4:21-cv-1236, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022).[42]

76. The granting of thousands of medical and administrative exemptions belies any assertion that vaccination is mission-critical and that virtually no religious exemptions can be granted. By approving so few religious accommodation requests, it is clear Plaintiffs' requests are not being meaningfully considering in accordance with the RFRA and the service regulations.

**FIRST CAUSE OF ACTION**
**(Religious Freedom Restoration Act)**

**Defendants' Orders Violate the Religious Freedom of Restoration Act.**

77. Plaintiffs Cadet N. Aime, Cadet T. Aime, TSgt Carey, Cadet Cass, TSgt Clements, Cadet Galdamez, Col Hall, Cadet D. Johnson, Cadet J. Johnson, SrA Kloster, Cadet Penney, Capt Pokrant, Cadet Staiger, Cadet Suess, Capt Wilburn, SrA Vasiliu, and Cadet Wojtkow incorporate all prior paragraphs as though fully set forth herein.

78. The RFRA precludes the government from substantially burdening an individual's sincerely

[41] Unlike the Air Force, the Coast Guard and Army have not provided public access to this information.

[42] NAVADMIN 083/22, https://www.mynavyhr.navy.mil/Portals/55/Messages/NAVADMIN/NAV2022/NAV22083.txt?ver=nrWEVeOH04FuCh6_8Wshxw%3d%3d (last visited June 23, 2022).

held religious beliefs, but only when the substantial burden is in furtherance of the government's compelling interest, and the substantial burden is the least restrictive means of furthering the government's compelling interest.

79. Defendants' orders have substantially burdened these Plaintiffs' religious beliefs and have compelled each Plaintiff to choose between compliance with the order and compliance with their respective religious beliefs.

80. Defendants' blanket denials of these Plaintiffs' religious accommodation requests are clearly not the least restrictive means for achieving a compelling government interest. To this point, each service branch has been effectively dealing with the pandemic for over 2 years, and has clearly established means to mitigate any perceived risk. Further, there are thousands of unvaccinated service members remaining on duty based on medical and administrative exemptions, demonstrating that less restrictive means exist.

81. Because Defendants' blanket denial of these Plaintiffs' religious accommodations is not the least restrictive means, Defendants are in violation of the RFRA. As such, this honorable Court should grant Plaintiffs' requested relief.

**SECOND CAUSE OF ACTION**
**(First Amendment, U.S. Constitution)**

**Defendants' Orders Violate Plaintiffs' Constitutional Rights to Free Exercise of Religion.**

82. Plaintiffs Cadet N. Aime, Cadet T. Aime, TSgt Carey, Cadet Cass, TSgt Clements, Cadet Galdamez, Col Hall, Cadet D. Johnson, Cadet J. Johnson, SrA Kloster, Cadet Penney, Capt Pokrant, Cadet Staiger, Cadet Suess, Capt Wilburn, SrA Vasiliu, and Cadet Wojtkow incorporate paragraphs 40-76 as though fully set forth herein.

83. The First Amendment to the United States Constitution protects the free exercise of religion.

84. Defendants' actions amount to hostility towards religious beliefs, as well as the creation of

secular exemptions from its policies, while refusing to accommodate religious exemptions, and constitute a violation of the First Amendment's Free Exercise Clause.

85. Plaintiffs therefore request this Court enjoin Defendants from enforcing these unconstitutional orders.

## THIRD CAUSE OF ACTION
## (Administrative Procedure Act)

**(Against Defendants Defense Secretary Austin and ADM Fagan)**

**Defendants' Vaccine Mandate Orders are Arbitrary and Capricious, and Contrary to Law. Defendants Specifically Issued These Orders Knowing They Were in Violation of 10 U.S.C. § 1107a and DoDI 6200.02, and the Mandate Orders Remain in Violation of this Statute and Regulation.**

86. Plaintiffs incorporate paragraphs 40-76 as though fully set forth herein.

87. The APA permits federal District Courts to review final agency action and enjoin the above executive entities from enforcing orders that are arbitrary, capricious, and contrary to law and regulation.

88. "Final agency action" is one from which legal consequences will flow.

89. The vaccine mandate constitutes final agency action because all Plaintiffs are required to either receive a COVID-19 vaccine or face adverse disciplinary action and involuntary separation from the service absent an approved accommodation.

90. As of August 10, 2021, Defendant Secretary of Defense Austin recognized that he needed a written Presidential waiver prior to requiring service members be involuntarily inoculated with an EUA approved vaccine.

91. When the FDA licensed COMIRNATY on August 23, 2021, it simultaneously reissued the EUA status for the Pfizer-BioNTech vaccine, recognizing that there was no COMIRNATY product available in the United States.

92. Despite this explicit recognition by the FDA that an FDA licensed product did not exist in the United States, Defendant Secretary of Defense Austin ordered all service members be inoculated with the EUA Pfizer-BioNTech vaccine.
93. At no point did Defendant Secretary of Defense Austin seek written waiver by the President.
94. Similarly, Defendant ADM Fagan issued an order, wholly adopting Defendant Secretary of Defense Austin's August 24, 2021, order, and required that all service members in the Coast Guard receive the unlicensed EUA Pfizer-BioNTech vaccine.
95. These orders were issued with knowledge that no FDA licensed product was available and that service members could not be forced to receive a non-licensed vaccine absent written Presidential waiver.
96. Defendants Secretary of Defense Austin's and AMD Fagan's purposeful violation of federal law when issuing these orders renders the orders arbitrary and capricious.
97. Furthermore, given the FDA's reissuance of the Pfizer-BioNTech EUA on June 17, 2022, the FDA's reissuance of the Moderna EUA on March 29, 2022, and the reissuance of the Johnson & Johnson EUA on May 5, 2022, the mandates are still in violation of 10 U.S.C. § 1107a and DoDI 6200.02 because the FDA has explicitly recognized that no "adequate, approved, and available alternative to the product" exists in the United States.
98. Because the mandate is arbitrary, capricious, and unlawful, this Court should enjoin the Defendants from enforcing it.

**FOURTH CAUSE OF ACTION**
**(Administrative Procedure Act)**

**Defendants' Orders Violate Regulations that Prohibit Forced Inoculations Without Consideration of an Individual's Personal Factors Like Previous Infection.**

99. Plaintiffs Cadet N. Aime, Cadet T. Aime, Lt Col Babcock, Maj Baumann, Cadet Beggs, TSgt Carey, Cadet Cass, Cadet Ford, Cadet Galdamez, Cadet D. Johnson, SrA Kloster, Cadet Paul, Capt Pokrant, Cadet Pym, Cadet Shaffer, Cadet Staiger, Cadet Suess, SrA Vasiliu, and Cadet Wojtkow incorporate paragraphs 40-76 as though fully set forth herein.

100. The APA permits federal District Courts to review final agency action and enjoin enforcement if it is in violation of service regulations.

101. Final agency action is one from which legal consequences will flow.

102. The vaccine mandate constitutes final agency action as all Plaintiffs are required to either receive a COVID-19 vaccine or face involuntary separation from the service.

103. Under AR 40-562, as applicable to all services, prior and natural immunity is a basis for a medical exemption from an involuntary inoculation.

104. Accordingly, commanders are required to determine prior or natural immunity before forcing a service member to involuntarily receive a mandated vaccine.

105. Defendant Secretary of Defense Austin's August 24, 2021, mandate explicitly states prior and natural immunity will not be considered. Defendant ADM Fagan's August 26, 2021, order reiterates this statement.

106. Each additional Defendant, in implementing this mandate, has similarly refused to consider prior and natural immunity as a proper medical exemption.

107. Defendants' purposeful violation of service regulations renders the mandate unlawful, and this Court should enjoin it from further enforcement.

## FIFTH CAUSE OF ACTION
## (Administrative Procedure Act)

**Defendant's Refusal to Follow Their own Service Regulations Results in a Violation of Plaintiff's Constitutional Right to Procedural Due Process Under the Fifth Amendment.**

108. Plaintiffs incorporate paragraphs 40-76 as though fully set forth herein.

109. The APA permits federal District Courts to review final agency action and enjoin enforcement if it is in violation of the constitution.

110. Final agency action is one from which legal consequences will flow.

111. The vaccine mandate constitutes final agency action as all Plaintiffs are required to either receive a COVID-19 vaccine or face involuntary separation from the service.

112. The Fifth Amendment to the United States Constitution affords service members procedural due process.

113. When services fail to follow their own regulations, should they choose to promulgate them, they violate the afflicted service member's constitutional right to procedural due process.

114. AR 40-562, as applicable to all services, requires medical exemptions from involuntary vaccines for those with prior and natural immunity.

115. Defendants are purposefully disregarding this regulatory requirement, and in turn are violating Plaintiffs' constitutional right to procedural due process.

116. Furthermore, DoDI 6200.02 requires informed consent, with an option to refuse, when a service member is required to be inoculated with an EUA vaccine.

117. Defendants issued the mandate, and continue to enforce the mandate, in knowing violation of this requirement. In turn, Defendants are violating Plaintiffs' constitutional right to procedural due process.

118. Accordingly, this Court should find the orders are violative of Plaintiffs' constitutional right to procedural due process and enjoin Defendants from enforcing them.

**RELIEF**

Wherefore, Plaintiffs respectfully pray that this Honorable Court:

(1) Declare the DoD/Coast Guard Mandate void because it is arbitrary, capricious, unlawful, and unconstitutional;

(2) Enjoin any implementation of the DoD/Coast Guard Mandate by the Defendant Armed Services or other DoD components, or stay the effective date for any implementation orders pending resolution by this Court;

(3) Declare Defendants' respective blanket policies of denying religious exemption accommodation requests unlawful, as each violates the First Amendment and Religious Freedom Restoration Act rights of military personnel;

(4) Award reasonable attorneys' fees and allowable costs under the Equal Access to Justice Act; and

(5) Award any further relief this Honorable Court deems necessary or appropriate in order to accord full and complete relief.

Dated: June 29, 2022

Respectfully Submitted,

*<u>/s/ Michael T. Rose</u>*
Michael T. Rose (S.C. Bar No. 0004910)
Mike Rose Law Firm, PC
409 Central Ave.
Summerville, SC 29483
Telephone: (843) 875 6856
mike@mikeroselawfirm.com
*Local Counsel*

*/s/ Carol A. Thompson*
Carol A. Thompson
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone: (202)862-4360
Facsimile: (888)899-6053
cthompson@fedpractice.com
*Application for Special Admission Pending*

*/s/ John J. Michels, Jr.*
John J. Michels, Jr.
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone: (202)862-4360
Facsimile: (888)899-6053
lmichels@fedpractice.com
*Application for Special Admission Pending*

*Counsel for Plaintiffs*